## No. 14,732.

OVERTON *v.* CITY AND COUNTY OF DENVER ET AL.

(102 P. [2d] 474)

Decided April 22, 1940.

Messrs. BLOUNT, JANUARY & YEGGE, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. FRANK A. BRUNO, Assistant, Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, Mr. MALCOLM LINDSEY, Mr. RICHARD F. RYAN, for defendants in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is a workmen's compensation case. Claimant was a member of the fire department in the city of Denver. January 25, 1936, he was sent by his superior to a home to help extinguish a fire, and in the course of his duties was ordered to the basement to shut off the gas meter. The basement was filled with smoke and gas and as a result of exposure thereto, as it is alleged, he developed an inflamation of the trachea and lungs which caused violent coughing. He was sent to the firemen's ward at Denver General Hospital, where he remained about three weeks. Later, when his condition failed to improve, he was examined by three or four doctors who discovered he was suffering from a substernal growth that apparently had been aggravated by the exposure. He became totally disabled.

A claim for compensation was filed, which, after due hearing, was allowed and to date claimant has been paid about $2,600. The Industrial Commission, being desirous of determining whether claimant could be restored to health, had him examined by a number of physicians during 1939, seven of whom recommended operative treatment to remove the growth. The physician for the Fire and Police Department, alone, opposed the operation.

At a hearing November 10, 1939, the commission, acting under section 360, chapter 97, '35 C.S.A., suspended further payments of compensation because of claimant's refusal "to submit to surgical treatment reasonably necessary to promote his recovery."

The case went to the district court under the prescribed practice, where the award of the commission was affirmed.

As to the reasons for claimant's refusal to submit to the recommended surgery, suffice it to say that he is fearful that the operation might prove fatal and has chosen to rely on the advice of the physician of the Fire and Police Department, who has examined him several times and has consistently opposed operative treatment,

on the ground that the growth is a sarcoma or aneurysm and that attempted surgery would prove fatal.

Seven other doctors, the qualifications of all being admitted, say that present diagnosis rules out both sarcoma and aneurysm; the theory being that if it had been either when examination was first made in 1936, claimant would not have survived. Their diagnosis is that the growth is a substernal goiter, that it can be removed without much difficulty and that the chances of claimant's survival are at least 85 per cent.

A number of X-ray pictures have been made which disclose the growth to be about the size of a lemon on the left side of the sternum and the size of a small lemon on the right side, the portion on the left extending from the space between the first and second ribs to above the clavicle. To reach it an incision necessarily would have to be made in the neck. The operation is considered a major one, but the risk, according to the seven doctors, is no greater than the average, although there was some testimony that it was more serious than an appendectomy or an operation for gallstones.

These doctors also were in agreement that claimant could be practically restored as a working unit. Claimant is forty-five years old, and in good health, otherwise; that is, heart and lungs are normal (except for the pressure caused by the growth) and weight is about one hundred sixty-five pounds. All the doctors agree there is little or no toxicity from the growth, and that there are no unfavorable results as shown by the blood count, metabolism test, or any of the other usual tests. The kymograph record shows a normal heart condition, although one of the doctors found some heart enlargement (myocarditis), presumably due to pressure.

One of the acknowledged leading surgeons in the city stated that in ninety-nine chances out of a hundred the growth was simply a goiter rather than some other type of tumor, with a ninety per cent chance of a successful operation.

Claimant sums up his assignments of error in two propositions: 1. Where the tendered operation is of a major character and attended with the hazard of loss of life, and the employee acts on the advice of his own physician, his refusal to submit to such an operation is not unreasonable, and compensation should not be denied on that ground. 2. The question of whether or not the employee's refusal to submit to an operation was unreasonable is one of law and not of fact, and the commission's conclusion that such conduct was unreasonable is not binding upon the courts.

1. As supporting the first proposition, claimant relies substantially on the following authority: "Nearly all of the cases support the rule stated in 73 A.L.R. 1307, that where the operation is of a major character and attended with serious risk to life or member, an injured employee's refusal to submit thereto is not unreasonable, and compensation should not be denied on that account." 105 A.L.R. 1476. Granting this to be the rule, it by no means follows that this case, as appears from the resumé of the testimony, falls within it, unless we find that all major operations involve serious risk to life or member, as a matter of law, which is the question raised by claimant's second proposition.

2. It may be conceded that some cases do hold that where it is undisputed that the proposed operative treatment is of a major character and dangerous to life or limb it is not unreasonable, as a matter of law, for the claimant to refuse to submit to it, but such a conclusion nullifies the discretion specifically lodged in the Industrial Commission by our statute, which is in part as follows: "If any employee * * * shall refuse to submit to * * * such * * * surgical treatment as is reasonably essential to promote his recovery, the commission may in its discretion, reduce or suspend the compensation of any such injured employee." '35 C.S.A., c. 97, §360. If, for instance, in this case the seven doctors had found that the suggested operative treatment

would probably be fatal, and the commission had still insisted on it, we might well find that the commission abused its discretion as a matter of law. Under our statute and practice, however, we must hold that the reasonableness of claimant's refusal to submit to operative treatment is a question of fact to be determined by the commission, as we are already committed to this doctrine. *National L. & C. Co. v. Kelly,* 101 Colo. 535, 75 P. (2d) 144; *Stahura v. Industrial Com.,* 103 Colo. 451, 86 P. (2d) 1080.

■ If claimant's physician—although provided by employer in the first instance—was right in his diagnosis, it is doubtful if this was a compensable case, but we are not called upon to determine that proposition. If his diagnosis is still correct, which diagnosis the commission now has an established statutory right to doubt, the claimant must yield to the provision of our law and submit to the recommended operative treatment or to a suspension of further payments of compensation.

Judgment affirmed.

MR. JUSTICE FRANCIS E. BOUCK and MR. JUSTICE BURKE concur.